# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-1244

MARY ANN TETEN, APPELLANT,

V.

TOGO D. WEST, JR.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    July 21, 2000    )

*Robert A. Laughlin*, of Omaha, Nebraska, was on the briefs for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Adam K. Llewellyn*, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*: The appellant, Mary Ann Teten, the widow of Korean Conflict combat veteran Alvin H. Teten, appeals, through counsel, a May 5, 1998, decision of the Board of Veterans' Appeals (BVA or Board) that dismissed for lack of legal merit the appellant's claim for Department of Veterans Affairs (VA) accrued benefits based on the veteran's claim for service connection for a kidney disorder. Record (R.) at 7. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The appellant has filed a brief and a reply brief, and the Secretary has filed a brief. For the reasons that follow, the Court will reverse the BVA decision and remand the matter.

## I. Relevant Facts and Procedural Background

The veteran served on active duty with the U.S. Army from January 1951 to October 1952, including combat service in Korea for which he was entitled to wear the Korean Service Medal with

Bronze Star. R. at 66. In August 1955, he filed an application for VA compensation or pension. R. at 266-69. In September 1981, a VA regional office (RO) first denied a claim for service connection for a kidney disorder. R. at 302. That decision became final when the veteran did not appeal it. The veteran filed a claim to reopen his disallowed kidney-disorder claim; that claim was denied (R. at 313), as was each subsequent claim to reopen (*see*, *e.g.*, R. at 10, 18, 30). In April 1989, the RO determined that new and material evidence had not been presented to reopen the veteran's disallowed kidney-disorder claim. R. at 488. In January, February, and April 1990, the RO confirmed that determination. R. at 505, 516, 530.

In an April 19, 1991, BVA decision, the Board denied the veteran's claim to reopen his disallowed claim for service connection for a kidney disorder. R. at 46-47. A July 1, 1991, letter from the BVA Chairman to the veteran, apparently responding to a "recent telephone conversation" that the Chairman had had with the veteran, stated: "This letter is a denial of your motion for reconsideration." R. at 49. On July 2, 1991, the veteran sent a letter to the BVA Chairman; that letter included the veteran's VA file number and the date of the BVA decision to be reconsidered, and set forth several alleged errors in that BVA decision. R. at 52. That letter was received by the Board on July 11, 1991 (R. at 54), and the Director of the VA Administrative Service sent to the veteran a letter dated July 18, 1991, that stated that the July 1, 1991, "letter denying your motion is the final administrative disposition of your appeal to the Board". R. at 56. On July 23, 1991, the BVA Chairman sent a letter to the veteran in response to his July 2, 1991, letter; the BVA Chairman's letter stated that he had received the veteran's July 2, 1991, letter on July 15, 1991, and that the Chairman had already denied the veteran's motion for reconsideration. R. at 58-59.

The veteran died on July 23, 1991, at 4:27 p.m., and the death certificate reported that the cause of his death was "left ventricular failure" due to "intra-operative myocardial infarction" due to "patient saphenous vein graft". R. at 72. On September 4, 1991, the appellant filed a Notice of Appeal with this Court as to the April 19, 1991, BVA decision. *Teten v. Brown*, U.S. Vet. App. No. 91-1492 (Notice of Appeal filed Sept. 4, 1991).

In April 1993, the appellant filed an application for dependency and indemnity compensation (DIC), VA non-service-connected death pension, and accrued benefits. R. at 61-64. In July 1993, the RO denied a claim for DIC based on service connection for the cause of the veteran's death and

denied an accrued-benefits claim on the following ground: "At the time of the veteran's death, there were no accrued benefits payable. Therefore, we have denied your claim for accrued benefits." R. at 75. (Although not involved in this appeal, it appears that a pension claim was denied due to lack of income eligibility. *See ibid*.)

On January 31, 1995, this Court, citing *Landicho v. Brown*, 7 Vet.App. 42 (1994), vacated the April 19, 1991, BVA decision, directed the Board to vacate any underlying RO decisions, and dismissed the appellant's appeal. R. at 77; *Teten*, 1995 WL 59079, at *1. In an April 1995 hearing before the RO, the appellant testified under oath and the appellant's representative noted that this Court had vacated the April 1991 BVA decision. R. at 81-98.

In a September 1995 letter, the RO denied the appellant's DIC and accrued-benefits claims. Supplemental (Suppl.) R. at 1-2. Attached to that letter was a September 1995 RO decision that determined that the veteran had not presented new and material evidence to reopen his disallowed kidney-disorder claim and a second September 1995 RO decision that denied DIC based on the veteran's cause of death. Suppl. R. at 4-10. The appellant filed a Notice of Disagreement with the RO decision as to her accrued-benefits and DIC claims. R. at 100. In January 1996, the RO issued a Statement of the Case (SOC) as to those claims. R. at 104. In May 1996, the appellant again testified under oath before the RO. Suppl. R. at 12-25. In October 1996, the RO issued a Supplemental SOC. R. at 126. In December 1996, the appellant filed a Substantive Appeal to the Board. R. at 133. At an April 1997 hearing before the Board, the Board member stated: "It was discussed before the hearing that the sole issue before the Board is entitlement to service connection for a kidney disorder for the purpose of accrued benefits." R. at 140. In the May 1998 BVA decision here on appeal, the Board dismissed for lack of legal merit the accrued-benefits claim. R. at 7.

## II. Analysis

### *A. Preliminary Matters*

The Court notes that the Board stated that at the April 1997 BVA hearing the appellant had withdrawn her appeal of the DIC claim based on the cause of the veteran's death and that the appellant has not argued that issue to the Court; thus, the Court considers that she has abandoned that claim on appeal, and the Court will address only the appealed issue. *See Ford v. Gober*, 10 Vet.App.

3

531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997). The Court also notes that the appellant frequently uses the term "DIC" in her briefs; it appears that the appellant is merely mistaken in her terminology because the related arguments are made as to her accrued-benefits claim.

On June 30, 2000, the Court issued an order regarding an unreasonable and unenforceable provision in the fee agreement in this case insofar as it purported to transfer to the appellant's attorney for his representation in this Court the appellant's "right to claim attorney fees or [sic] expenses . . . to the full extent that such rights are conferred upon the Client by the [Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA)]" (Fee Agreement at 1). *See Fritz v. West*, 13 Vet.App. 190, 192-93 (1999); *In the Matter of the Fee Agreement of Mason*, 11 Vet.App. 514, 516 (1998) (per curiam order); *Shaw v. Gober*, 10 Vet.App. 498, 506 (1997). On July 17, 2000, the attorney filed a revised fee agreement that removes the objectionable provision, and the Court will thus proceed to review the appeal.

### B. Accrued Benefits

Certain survivors of a deceased veteran are eligible to receive from VA payment of "accrued benefits" based upon the deceased veteran's statutory entitlement to such benefits. An accrued benefit is a periodic payment "to which [the veteran] was entitled at death under existing ratings or decisions, or . . . based on evidence in the file at date of death and due and unpaid for a period not to exceed two years." 38 U.S.C. § 5121(a); *see also* 38 C.F.R. § 3.1000 (1999). An accrued-benefits claim asserting that a veteran's disorder was service connected incorporates any prior final adjudications of the service-connection issue on claims brought by the veteran, because it derives from the veteran's service-connection claim. *See Jones (Ethel) v. West*, 136 F.3d 1296, 1299 (Fed. Cir. 1998); *Smith (Irma) v. Brown*, 10 Vet.App. 330, 334 (1997); *Martin (Mary Ann) v. Brown*, 7 Vet.App. 196, 198-99 (1994).

The appellant argues that the Board erred in determining that the veteran had no claim pending before VA at the time of his death, and the Secretary disagrees. In the May 1998 BVA decision, the Board concluded that the veteran had no claim pending at the time of his death on the ground that the veteran's motion for BVA reconsideration had been denied before he died. The Board then denied the appellant's accrued-benefits claim based on the Federal Circuit's holding in

4

*Jones (Ethel)*, that "without the veteran having a claim pending at time of death, the surviving spouse has no claim upon which to derive . . . her own application" for accrued benefits, *Jones (Ethel)*, 136 F.3d at 1300. R. at 6. In that May 1998 BVA decision, the Board failed to apply or even mention this Court's January 1995 order that had vacated the April 1991 BVA decision (and consequently any underlying RO decision, *see Yoma v. Brown*, 8 Vet.App. 298, 299 (1995) (per curiam order)), upon which the veteran's motion for BVA reconsideration was based. *Teten*, 1995 WL 59079, at *1; R. at 77-78. That 1995 Court order had vacated the April 1991 BVA decision in order "to ensure that the BVA decision [which had not become final upon the veteran's death] and the underlying RO decision will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements." *Ibid*.; *see also Landicho*, 7 Vet.App. at 53-54 (holding that, where veteran dies during pendency of claim, appropriate remedy is for Court to vacate BVA and RO decisions in order that those decisions will "pose no actual or threatened injury" to any accrued-benefits claimants); *accord*, *Zevalkink v. Brown*, 102 F.3d 1236, 1243-44 (Fed. Cir. 1996) (expressly agreeing with this Court's *Landicho* holding); *Swanson v. West*, 13 Vet.App. 197, 198-99 (1999) (per curiam order); *Smith (Irma)* and *Yoma*, both *supra*.

In a recent opinion in *Kelsey v. West*, this Court held that, "where a veteran dies subsequent to a Board decision, but prior to filing an NOA . . . , there is no discernible basis for a different outcome" from the outcomes in *Zevalkink*, *Swanson*, *Landicho*, and *Smith (Irma)*, all *supra*. *Kelsey*, 13 Vet.App. 437, 438 (2000) (per curiam order). We conclude that the situation in this case is no different from the situation in *Kelsey*. That is, even if the veteran had filed a motion for BVA reconsideration, he "die[d] subsequent to a Board decision, but prior to filing an NOA", *Kelsey*, *supra*, and before the NOA-filing period had expired. *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991) (holding that NOA is timely and Court has jurisdiction to hear appeal where appellant has (1) filed motion for BVA reconsideration within 120 days after mailing date of notice of underlying final BVA decision ***and also*** (2) filed NOA within 120 days after BVA Chairman has mailed notice of denial of reconsideration motion). Accordingly, we conclude that the veteran's claim remained pending at the time of his death, because the 120-day period within which he could file an NOA as to the BVA decision had not yet run. *See Kelsey*, *supra*; *see also Zevalkink*, *Swanson*, *Landicho*, and

5

*Smith (Irma)*, all *supra*. The Court thus holds that the May 1998 BVA decision erred in failing to adjudicate the appellant's claim for accrued benefits.

Moreover, for those same reasons, the Court's 1995 vacatur of the April 1991 BVA decision and the underlying RO decision was an appropriate remedy in light of the law applied above and in the Court's January 1995 order. The Court notes that the Secretary requests that this Court withdraw its January 1995 order on the ground that it was clearly erroneous. "Where a case is addressed by an appellate court, remanded, then returned to the appellate court, the 'law of the case' doctrine operates to preclude reconsideration of identical issues." *Johnson (Anne) v. Brown*, 7 Vet.App. 25, 26-27 (1994) (per curiam order); *see also Allin v. Brown*, 10 Vet.App. 55, 57 (1997); *Chisem v. Brown*, 8 Vet.App. 374, 375 (1995). This Court recognizes three "exceptional circumstances" where the law-of-the-case doctrine should not apply: "(1) When the evidence in a subsequent trial was substantially different; (2) when the controlling authority has since made a contrary decision as to applicable law; or (3) when the decision was clearly erroneous." *Chisem*, *supra* (citing *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985)). Because, as the above discussion makes clear, the 1995 Court order is not clearly erroneous, the Court is precluded from reconsidering the issue of whether the veteran's claim for service connection for a kidney disorder was pending at the time of his death.

In view of all the foregoing analyses, the Court will reverse the May 1998 BVA decision and remand that matter for the Board to adjudicate the merits of the accrued-benefits claim.

The appellant requests that the Court consider the merits of her accrued-benefits claim if the Court finds that she may pursue that claim. However, because the Board has not yet considered that matter, the Court will remand the claim for the Board to consider it in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (holding that, although Court's ultimate conclusion might be question of law, such conclusions are based on factual determinations that are not for Court but for Board to make in first instance); *see also Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000) (holding that, even where legal argument was not raised to Board, it might be appropriate for Court to remand to Board). The Court will thus not reach the appellant's "benefit of the doubt" argument.

### C. Miscellaneous Matters

The appellant argues that the Board erred in its adjudication by ignoring the requirement that all "claims for death benefits will be decided without regard to any prior disposition of those issues during the veteran's lifetime", 38 C.F.R. § 20.1106 (1999). However, "[t]he appellant's argument was considered and rejected in *Zevalkink* when the Court sustained the Secretary's interpretation of § 20.1106 as not applicable to accrued-benefits claims. *Zevalkink*, 6 Vet.App. at 491-92." *Landicho*, 7 Vet.App. at 52.

She also asserts that the Board erred in denying the appellant's claim on a basis different from that of the RO without giving her an opportunity to respond and without, apparently, providing an adequate statement as to why she was not prejudiced by that lack of opportunity. The Secretary did not address this issue in his brief. However, because the Court has held that the appellant may pursue her accrued-benefits claim, the Court will not reach that issue.

Further, the appellant appears to contend that there is no need for the veteran's claim to be pending at the time of his death; but that is clearly incorrect under *Jones (Ethel)*, *supra*. She also appears to argue that her accrued-benefits claim is timely on the ground that she filed it while the veteran's claim was pending before this Court. The Secretary does not contest this issue. In *Kelsey*, as here, the surviving spouse filed an NOA with this Court within one year after the veteran's death, and the Court in *Kelsey* held that that NOA was an informal claim for accrued benefits. *Kelsey*, 13 Vet.App. at 438. In the instant case, the appellant's September 4, 1991, NOA, which was filed within one year after the veteran's July 23, 1991, death, was an informal claim and is thus timely under 38 U.S.C. § 5121(c).

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the submissions of the parties, the Court reverses the May 5, 1998, BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5107, 5121, 7104(a), (d)(1); *Kelsey*, *supra*; *see also Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide

7

for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence (to the extent permitted under section 5121(a), *see Hayes v. Brown*, 4 Vet.App. 353, 360 (1993) (regarding post-date-of-death evidence)) and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.